# UNITED STATES BANKRUPTCY COURT
### Eastern District of Pennsylvania

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| REGIONAL MEDICAL | : | Case  No. 19-15513 AMC |
| TRANSPORTATION, INC. | : | |
| | : | |
| Debtor | : | Chapter 11 |

## DISCLOSURE STATEMENT

## I.    INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the Chapter 11 case of Regional Medical Transportation, Inc. ("Debtor").  This Disclosure Statement contains information about the Debtor and describes the Plan of Reorganization (the "Plan") filed by the Debtor.   A full copy of the Plan is attached to this Disclosure Statement as Exhibit "A".  ***Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed in greater detail herein.  In summary, the Debtor will (a) pay the U.S. Dept. of Labor the secured and priority portions of its claims; (b) pay certain vehicle loan lenders the secured portion of their claims modified to the vehicle's value in full satisfaction of their lien; (c) allow motor vehicle accident creditors to seek insurance proceeds; (d) pay administrative fees to Debtor's attorneys; (d) pay all remaining priority claims; and (e) make an estimated 20-35% distribution to general unsecured claims.  The Debtor will pay the following amounts per month for the fifty (50) month period beginning on the Confirmation Date as herein defined:

a.    **U.S. Dept. of Labor** –$168,650.00 paid directly to the U.S. Dept. of Labor in installments of $3,373/month, plus its *pro rata* share of the general unsecured class distribution;

b.    **Wetzel Gagliardi Fetter & Lavin LLC** (Debtor's Attorneys) - $42,500.00 in installments of $850.00/month;

c.    **City of Philadelphia** - $5,187.85 in installments of $103.76/month;

d.    **Internal Revenue Service** - $340.07 paid on the Confirmation Date in full satisfaction of the amount due.

e.    **Toyota Financial Svcs.** - $52,827.99 in installments of $1,056.56/month, plus its *pro rata* share of the general unsecured class distribution.

f.    **Citizens Bank N.A.** - $17,618.50 in installments of $353/month, plus its *pro rata* share of the general unsecured class distribution;

g.      **Ford Motor Credit** - $18,118.32 in installments of $362.37/month plus, its *pro rata* share of the general unsecured class distribution;

h.      **Santander Consumer USA, Inc. d/b/a Chrysler Capital** – $83,844.37 in installments of $1,677.00/month, plus its *pro rata* share of the general unsecured class distribution;

i.      **Ally Bank** – $53,793.62 in installments of $1,075.87/month, plus its *pro rata* share of the general unsecured class distribution;

j.      **Sterling National Bank** - $77,643.06 in installments of $1,553.00/month, plus its *pro rata* share of the general unsecured class distribution.

k.      **Non-Priority Unsecured Creditors** – General Unsecured creditors will receive a *pro rata* share of $75,000.00, paid in monthly installments.  Unsecured creditors are expected to receive an estimated 20% - 35% distribution depending upon the Debtor's objections to certain claims, deficiency balances from secured vehicle lenders and the extent of insurance coverage available for certain motor vehicle accident creditors.

Payments pursuant to this Plan will commence on the Confirmation Date of Plan. The Confirmation Date of this Plan is the eleventh business day following the date of the entry of the order of confirmation.  If a stay of the confirmation order is in effect on that date, the Confirmation Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

A.      **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the Plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why Debtor believes the  Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**THE ACCURACY OF THE INFORMATION, PARTICULARLY FINANCIAL INFORMATION, SUBMITTED WITH THIS DISCLOSURE STATEMENT IS DEPENDENT UPON INFORMATION OBTAINED FROM THE DEBTOR'S BOOKS AND RECORDS. WHILE EVERY EFFORT HAS BEEN MADE TO PROVIDE THE MOST ACCURATE INFORMATION AVAILABLE, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT ALL INFORMATION IS WITHOUT INACCURACY.  NO KNOWN**

**INACCURACIES ARE INCLUDED.  ANY FINANCIAL PROJECTIONS CONTAINED ARE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE AND BELIEF.  IN SOME INSTANCES FINANCIAL PROJECTIONS ARE PREPARED TO PRESENT ONE OR MORE HYPOTHETICAL COURSES OF ACTION AS SET FORTH IN THIS STATEMENT.  WHILE EVERY EFFORT HAS BEEN MADE TO ENSURE THAT THE ASSUMPTIONS ARE VALID AND THAT THE PROJECTIONS ARE AS ACCURATE AS CAN BE MADE UNDER THE CIRCUMSTANCES, THE DEBTOR DOES NOT UNDERTAKE TO CERTIFY OR WARRANT THE ABSOLUTE ACCURACY OF THE FINANCIAL PROJECTIONS.**

B.    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.    *Time and Place of the Hearing to Approve This Disclosure Statement and to Set a Hearing to Confirm the Plan*

The hearing at which the Court determines whether to approve this Disclosure Statement will take place at 11:00 a.m. on  April 13, 2020 , at the United States Bankruptcy Court for the Eastern District of Pennsylvania, Robert N.C. Nix, Sr. Federal Courthouse, Courtroom Number 4, 900 Market Street, Philadelphia, PA 19107.

2.    *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the Plan, vote using the ballot to be provided after the above-referenced hearing and return the ballot in the envelope to be provided to John A. Gagliardi, Esquire, Wetzel Gagliardi Fetter & Lavin, LLC, 122 S. Church St., West Chester, PA 19382. See, section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by the deadline set at the Disclosure Statement Hearing.  You will receive notice of that deadline when you receive your voting ballot.  Your ballot must be received by the deadline or it will not be counted.

3.    *Identity of Person to Contact for More Information*

If you want additional information about the Disclosure Statement, Plan or its contents, you should contact John A. Gagliardi, Esquire, Wetzel Gagliardi Fetter & Lavin, LLC, 484-887-0779 Ext. 102, jgagliardi@wgflaw.com.

II.    **BACKGROUND**

A.    **Description and History of the Debtor's Business**

Regional Medical Transportation, Inc. ("Debtor") is a Pennsylvania corporation which was incorporated on May 30, 2015 and began operating in mid-2016.  It was started by Nikanor and Mariya Broytman, husband and wife.  Mariya Broytman is the President and sole shareholder of the Debtor. Nikanor Broytman is the Vice President who manages daily operations.  The Debtor operates a medical transportation business whereby it provides transportation to individuals to and from medical

appointments including but not limited to dialysis treatments, doctors visits and outpatient procedures. The Debtor operates with approximately forty-one (41) employees and a fleet of twenty-one (21) vehicles. The vehicles used by the Debtor are either owned by the Debtor or owned by entities controlled by the Debtor's principals and leased to the Debtor.  All vehicles owned by the Debtor are subject to leases or outstanding vehicle loans which exceed their value.

From the date of incorporation in 2015 until it started operating in 2016, the Debtor sought contracts with government agencies and managed care organizations to provide non-emergency medical transportation.  Ultimately, the Debtor was unable to contract directly with the government agencies.  Instead, the Debtor contracted with third party provider LogistiCare as a vendor providing non-emergency medical transportation.  LogistiCare contracted with the government agencies and/or managed care organizations and used vendors like the Debtor to provide the required transportation services to patients.  LogistiCare remains the Debtor's primary contract providing an estimated 80% of its revenue annually.  Since 2017, the Debtor has worked with Uber to provide wheelchair accessible transportation through the Uber app.  To date, Uber accounts for the balance of the Debtor's annual revenue.

In 2017, the U.S. Department of Labor ("DOL") filed a complaint under the Fair Labor Standards Act (29 U.S.C. Section 201 et. seq. ("FLSA") to recover back wages and liquidated damages on behalf of current and former employees of the Debtor and several affiliated companies as well as Nikanor Broytman individually.  On September 5, 2018, the United States District Court for the Eastern District of Pennsylvania found that all Defendants had violated the FLSA and that all were jointly and severally liable for willful violations, back wages and liquidated damages.  See, 17-CV-3454-JCJ (E.D.Pa.).  On January 2, 2019, the District Court approved a Consent Judgment signed by all parties in the amount of $230,419.18 inclusive of back wages, liquidated damages, and interest on a four-month repayment plan.  The Debtor was unable to make payments pursuant to the Consent Judgment and on August 20, 2019, the DOL garnished and froze the Debtor's operating and payroll accounts causing its final pre-petition payroll checks not to clear.  As a result, the Debtor was unable to operate and filed its Chapter 11 Petition on September 4, 2019.

Under the terms of the Debtor's proposed Plan, the amount required to maintain secured payments to vehicle lenders would be significantly reduced to the petition date value of the vehicles, and the repayment term extended in an effort to increase cash flow and fund the Debtor's Plan (as described at Section III.C. below).  Such a reduction is the key to allowing the Debtor to fully perform under the terms of its proposed Plan.  Debtor's vehicles and drivers are critical to its business.  Maintaining stability in payroll and certainty in expenses moving forward are key elements of its proposed Plan.

B.    **Insiders of the Debtor**

Debtor employs several Broytman family members as key employees in order to operate its business.  See, Notice of Insider Compensation attached hereto as Exhibit "B".  The compensation for Nikanor Broytman increased from $2,756.00/month to $4,756/month (gross figures) pursuant to this Court's Final Order Authorizing the use of Cash Collateral.  See, Docket Entry #87.  Pursuant to the terms of the proposed Plan, the Debtor proposes increasing compensation for Nikanor Broytman from $4,756/month to $6,756/month (gross figures).  Mr. Broytman manages the Debtor's entire operation and this increase will more closely align his salary in accordance with industry standards.

C.      **Events Leading to Chapter 11 Filing**

<u>See</u>, Section II.A., above.

D.      **Significant Events During the Bankruptcy Case**

Soon after the filing date, the Debtor filed motions requesting the authority to use cash collateral and requesting that the U.S. Dept. of Labor levies served upon LogistiCare and Uber, as well as the Debtor's banking institutions, be lifted.  Temporary and final orders were entered regarding the use of cash collateral which granted a replacement lien to the Dept. of Labor in the amount of $50,000.00 while also lifting the their levies on accounts.  The Debtor was permitted to pay its pre-petition payroll obligations to its employees, and has done so.  The cash collateral orders also served to limit the Debtor's payments to Insiders and forced the Debtor to streamline its payroll, resulting in further reductions.  As a result, the Debtor has been able to operate its business since the filing date without interruption.  Pursuant to the cash collateral orders, the Debtor has been making adequate protection payments to the Dept. of Labor since October 2019.  To date, the Debtor has paid the Dept. of Labor $17,750.00 post-petition.  The Debtor has been unable to maintain its contractual obligations to its vehicle loan lenders.  A few months post-petition, all of such lenders filed motions for relief from the automatic stay based on the Debtor's inability to maintain post-petition payments.  To the extent said motions have not otherwise been resolved, they are being addressed herein through the Debtor's proposed Plan.

E.      **Projected Recovery of Avoidable Transfers**

The Debtor does not intend to pursue preference, fraudulent conveyance, or avoidance actions.

F.      **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.

G.      **Current and Historical Financial Conditions**

The identity and fair market value of the Debtor's assets are listed in Schedule "A/B" of Debtor's Petition.  These schedules are attached to this Disclosure Statement as Exhibit "C".  Assets were valued based on the Debtor's understanding of their value, as well as internet valuation websites such as www.kbb.com.

Debtor's cash receipts since filing its Bankruptcy have averaged $131,500.00/month.  Although Debtor's business is not seasonal, there are historically slower periods which occur in December/January and July/August.  As previously mentioned, the Debtor's revenue derives entirely from its two contracts with LogistiCare and Uber.  While not ideal, the Debtor's relationships with both entities has been stable since their inceptions, and the Debtor does not have any reason to believe that its revenues from these sources will significantly decrease over the term of its proposed Plan.  The Debtor continues to market itself to other entities in an effort to increase its revenues, and hopes to obtain additional contracts in due course.  Even based on historical revenue averages, and with the

reduced vehicle loan payments proposed herein, the Debtor anticipates being able to maintain all of its necessary operating expenses and the debt service required by its proposed Plan.

III.    **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

A.    **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.    **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the Confirmation Date of the Plan, unless a particular claimant agrees to a different treatment. The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Professional Fees of Wetzel Gagliardi Fetter & Lavin LLC, attorneys for the Debtor, as approved by the Court. | $42,500.00 | By agreement between the Debtor and its attorneys, payments in this Class will begin on the Confirmation Date in equal monthly installments of $850.00 over the fifty (50) month period following the Confirmation Date. |
| Office of the U.S. Trustee Fees | $1,950 - $4,875 /quarter | Paid quarterly as they become due until bankruptcy proceeding is closed or final decree entered. |
| TOTAL | $42,500.00 plus $1,950 - $4,875.00/quarter | |

6

2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by
§ 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it
must receive the present value of such claim, in regular installments paid over a period not exceeding 5
years from the order of relief.  The following chart lists the Debtor's estimated § 507(a)(8) priority tax
claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Department of the Treasury - Internal Revenue Service Claim #12 | $340.07 | 11/2019 | Debtor will pay $340.07 on the Confirmation Date in full satisfaction of the amount due. This amount shall be paid directly to the Internal Revenue Service in full satisfaction of its claim. |
| City of Philadelphia Claim #2 | $5,187.85 | Various | Debtor will pay $5,187.85 (calculated as the claim amount of $4,472.41 plus 6% interest since the filing date)  over the fifty (50) month period beginning on the Confirmation Date in equal monthly installments of $103.76 and paid directly to the City of Philadelphia. |
| U.S. Dept. of Labor Claim #9 | $136,400.00 | Various | Debtor will pay $136,400.00 over the fifty (50) month period beginning on the Confirmation Date in equal monthly installments of $2,728.00 and paid directly to the U.S. Dept. of Labor. This payment amount is inclusive of interest since the filing date. |

C.    **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will
receive under the Plan:

1.    *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or
that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  The
following chart lists all classes containing Debtor's secured prepetition claims and their proposed
treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | *Secured Claim of*: U.S. Dept. of Labor Claim #9 Collateral description: Debtor's Assets Secured Claim Amount = $32,250.00 Priority of lien = 1st Position on equity in assets. Pre-pet. arrearage = N/A | No. | Unimpaired. | The U.S. Dept. of Labor is secured in the amount of $32,250.00. Debtor will pay $32,250.00 over the fifty (50) month period beginning on the Confirmation Date in equal monthly installments of $645.00 and paid directly to the U.S. Dept. of Labor. This payment amount is inclusive of interest. |
| 2 | *Secured claim of*: Toyota Fin. Svcs./ Champion Toyota Claim #(None Filed) Collateral description/VIN= 2017 Toyota Sequoia 5TDJY5G19HS149217 Value[1]: $26,466.00 2017 Toyota Sienna 5TDDZ3DC8HS161847 Value: $21,623.00 Secured Claim Amount = $68,929.96 Pre-pet. arrearage = N/A | No. | Impaired. | Toyota Financial Svcs. holds a purchase money security interest in the Debtor's vehicles as described herein. Per kbb.com, the vehicles are valued at $48,089.00. The Debtor will pay Toyota Fin. Svcs. $52,827.99 which equates to $48,089.00 plus interest at the rate of 4.5% per annum. This amount shall be paid in equal monthly installments of $1,056.56 over the fifty (50) month period beginning on the Confirmation Date and paid directly to Toyota Fins. Svcs. in full satisfaction of its secured claim, inclusive of any pre- or post-petition arrears. Any remaining balance due on the claim shall be a Class 8 general unsecured claim. The lien on the vehicle(s) shall remain unless and until the secured portion of the claim is satisfied pursuant to this Plan. Debtor shall maintain insurance coverage on the vehicle(s) securing this/these claim(s). Upon request, Debtor shall provide written proof of such payment(s)/coverage(s). If (1) payments under this Plan are not timely made, or (2) insurance is not kept in place, then stay relief shall be granted upon ten (10) days' notice of default to Debtor and Debtor's counsel, and failure by the Debtor to cure said default. |

---

[1] Vehicle Values as listed throughout the Debtor's Disclosure Statement and proposed Plan are based on petition date values from kbb.com (copies attached hereto as Exhibit "E"). To the extent necessary, the Debtor reserves the right to discount these values based on valuations to be done by a vehicle appraiser which would account for their actual condition given the nature of their usage. Vehicle Valuation websites such as kbb.com will not value a vehicle in less than "Fair" Condition.

| 3 | *Secured claim of*: Citizens Bank, N.A. Claim #3<br><br>Collateral description/VIN= 2017 Chev. Express 1GAZGPFG3H1118106 Value: $16,038<br><br>Secured Claim Amount = $22,234.63<br><br>Pre-pet. arrearage = $1,886.69 | No. | Impaired. | Citizens Bank N.A. holds a purchase money security interest in one of the Debtor's vehicles. Per kbb.com, the vehicle is valued at $16,038.00.  The Debtor will pay Citizens Bank, N.A. $17,618.50 which equates to $16,038.00 plus interest at the rate of 4.5% per annum.  This amount shall be paid in equal monthly installments of $353 over the fifty (50) month period beginning on the Confirmation Date and paid directly to Citizens Bank, N.A. in full satisfaction of its secured claim, inclusive of any pre- or post-petition arrears.  Any remaining balance due on the claim shall be a Class 8 general unsecured claim.  The lien on the vehicles shall remain unless and until the secured portion of the claim is satisfied pursuant to this Plan. Debtor shall maintain insurance coverage on the vehicle securing this claim.  Upon request, Debtor shall provide written proof of such payment(s)/coverage(s).  If (1) payments under this Plan are not timely made, or (2) insurance is not kept in place, then stay relief shall be granted upon ten (10) days' notice of default to Debtor and Debtor's counsel, and failure by the Debtor to cure said default. |

| 4 | *Secured claim of*: Ford Motor Credit Co. LLC Claim #4<br><br>Collateral description/VIN= 2017 Ford Transit H 1FBZX2YM9HKA83020 Value: $16,493<br><br>Secured Claim Amount = $31,801.65<br><br>Pre-pet. arrearage = $0.00 | No. | Impaired. | Ford Motor Credit Co. LLL holds a purchase money security interest in one of the Debtor's vehicles.  Per kbb.com, the vehicle is valued at $16,493.00. The Debtor will pay Ford Motor Credit Co. LLC $18,118.32 which equates to $16,493.00 plus interest at the rate of 4.5% per annum.  This amount shall be paid in equal monthly installments of $362.37 over the fifty (50) month period beginning on the Confirmation Date and paid directly to Ford Motor Credit Co. LLC in full satisfaction of its secured claim, inclusive of any pre- or post-petition arrears.  Any remaining balance due on the claim shall be a Class 8 general unsecured claim. The lien on the vehicles shall remain unless and until the secured portion of the claim is satisfied pursuant to this Plan. Debtor shall maintain insurance coverage on the vehicle securing this claim.  Upon request, Debtor shall provide written proof of such payment(s)/coverage(s).  If (1) payments under this Plan are not timely made, or (2) insurance is not kept in place, then stay relief shall be granted upon ten (10) days' notice of default to Debtor and Debtor's counsel, and failure by the Debtor to cure said default. |

| 5 | *Secured claims of*: Santander Consumer USA, Inc. d/b/a Chrysler Capital Claims #5,6,7,8,10,11,13<br><br>Collateral description/VIN= 2016 Ford Transit 1FTYE1CM9GKA27057 Value: $11,881<br>2016 Ford Transit 1FTYE1CM7GKA27056 Value: $13,264<br>2016 Ford Transit 1FTYE1CM8GKA32945 Value: $13,264<br>2016 Ford Transit 1FTYE1CMXGKA09196 Value: $13,652<br>2016 Ford Transit 1FTTE1CM6GKA32944 Value: $12,751<br>2017 Dodge Grand Caravan 2C4RDGBG2HR605685 Value: $10,144<br><br>Secured Claim Amount = $104,664.64<br><br>Pre-pet. arrearage = $15,154.95 | No. | Impaired. | Santander Consumer USA, Inc. holds a purchase money security interest in the Debtor's vehicles as described herein. Per kbb.com, the vehicles are valued as described herein.  The Debtor will pay Santander Consumer USA, Inc. $83,844.37, which equates to $74,956.00 plus interest at the rate of 4.5% per annum.  This amount shall be paid in equal monthly installments of $1,677.00 over the fifty (50) month period beginning on the Confirmation Date and paid directly to Santander Consumer USA, Inc. in full satisfaction of its secured claim, inclusive of any pre- or post-petition arrears.  Any remaining balance due on the claim shall be a Class 8 general unsecured claim.  The lien on the vehicle(s) shall remain unless and until the secured portion of the claim is satisfied pursuant to this Plan.  Debtor shall maintain insurance coverage on the vehicle(s) securing this/these claim(s). Upon request, Debtor shall provide written proof of such payment(s)/coverage(s).  If (1) payments under this Plan are not timely made, or (2) insurance is not kept in place, stay relief shall be granted upon ten (10) days' notice of default to Debtor and Debtor's counsel, and failure by the Debtor to cure said default. |

| 6 | *Secured claims of*: Ally Bank Claims #17,18,19,20,21

Collateral description/VIN= 2016 Ford Transit 1FMZK1CMXGKA27089 Value: $10,728 2017 Chev. Express 1GAZGPFG4H1111567 Value: **Totaled** 2016 Ford Transit 1FMZK1CM7GKA27082 Value: $11,610 2016 Chev. Express 1GAZGPFG7G1210009 Value: $12,932 2016 Chev. Express 1GAZGPFG3G1332771 Value: $13,698

Secured Claim Amount = $135,641.97

Pre-pet. arrearage = $24,708.47 | No. | Impaired. | Ally Bank holds a purchase money security interest in the Debtor's vehicles as described herein. Per kbb.com, the vehicles are valued as described herein. The Debtor will pay Ally Bank $53,793.62 which equates to $48,968.00 plus interest at the rate of 4.5% per annum. This amount shall be paid in equal monthly installments of $1,075.87 over the fifty (50) month period beginning on the Confirmation Date and paid directly to Ally Bank in full satisfaction of its secured claims, inclusive of any pre- or post-petition arrears. Any remaining balance due on the claim shall be a Class 8 general unsecured claim. The lien on the vehicle(s) shall remain unless and until the secured portion of the claim is satisfied pursuant to this Plan. Claim #18 is secured by any available insurance proceeds and a Class 8 general unsecured claim for the deficiency balance, if any. Debtor shall maintain insurance coverage on the vehicle(s) securing this/these claim(s). Upon request, Debtor shall provide written proof of such payment(s)/coverage(s). If (1) payments under this Plan are not timely made, or (2) insurance is not kept in place, stay relief shall be granted upon ten (10) days' notice of default to Debtor and Debtor's counsel, and failure by the Debtor to cure said default. |

| 7 | *Secured claims of*: Sterling National Bank Claim #24<br><br>Collateral description/VIN= 2017 Dodge Grand Caravan 2C4RDGBG8HR746910 Value: $23,885<br>2017 Dodge Grand Caravan 2C4RDGBG8HR619620 Value: $23,512<br>2017 Dodge Grand Caravan 2C4RDGBG8HR627201 Value: $23,281<br><br>Secured Claim Amount = $94,164.56<br><br>Pre-pet. arrearage = $0 | No. | Impaired. | Sterling National Bank holds a purchase money security interest in the Debtor's vehicles as described herein. Per kbb.com, the vehicles are valued as described herein. The Debtor will pay Sterling National Bank $77,643.06 which equates to $70,678 plus interest at the rate of 4.5% per annum. This amount shall be paid in equal monthly installments of $1,553.00 over the fifty (50) month period beginning on the Confirmation Date and paid directly to Sterling National Bank in full satisfaction of its secured claim, inclusive of any pre- or post-petition arrears. Any remaining balance due on the claim shall be a Class 8 general unsecured claim. The lien on the vehicle(s) shall remain unless and until the secured portion of the claim is satisfied pursuant to this Plan. Debtor shall maintain insurance coverage on the vehicle(s) securing this/these claim(s). Upon request, Debtor shall provide written proof of such payment(s)/coverage(s). If (1) payments under this Plan are not timely made, or (2) insurance is not kept in place, stay relief shall be granted upon ten (10) days' notice of default to Debtor and Debtor's counsel, and failure by the Debtor to cure said default. |
|---|---|---|---|---|

### 2.    *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the Confirmation date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment. There are no claims of this type against the Debtor.

### 3.    *Classes of General Unsecured Claims*

General unsecured claims are not secured by property of the estate, and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Classes 8 and 9, which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 8 | General Unsecured Class | Impaired. | Unsecured creditors will receive a *pro rata* share of $75,000.00 which is greater than what this Class would receive upon liquidation. This amount shall be paid in equal monthly installments of $1,500.00 over the fifty (50) month period beginning on the Confirmation Date and paid directly to the unsecured creditors in full satisfaction of their respective claims. Unsecured creditors are expected to receive an estimated 20% - 35% distribution depending upon the Debtor's objections to certain claims, deficiency balances from secured vehicle lenders, and the extent of insurance coverage available for Class 8 creditors. |
| 9 | Motor Vehicle Accident Claims – Claims #14, 23, 27 | Impaired. | Holders of claims against the Debtor related to motor vehicle accidents are hereby granted limited relief from the automatic stay pursuant to 11 U.S.C. Section 362 for the sole purpose of pursuing insurance proceeds applicable to their respective claim. Any amount not paid by insurance carrier(s) shall be considered a Class 8 general unsecured claim. |

4.    *Debtors' Interests*

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 10 | Debtor's Interest Holder: Mariya Broytman | Impaired. | All Interests in the Debtor shall transfer and become Interests in the Reorganized Debtor for the purpose of fulfilling the obligations of the Reorganized Debtor under the Plan; however, the holder of Interest shall not receive any distributions on account of such Interests, unless and until all Creditors are paid in full in accordance with the Plan. |

D.    **Means of Implementing the Plan**

1.    *Plan Funding and Feasibility*

The revenue generated from the Debtor's operations shall be used to fund payments consistent with the terms of its Plan.  Exhibit "D" to this Disclosure Statement consists of the Debtor's projections over the term of its Plan.  As previously mentioned, the Debtor's revenue sources (LogistiCare and Uber) are, and have traditionally, been very stable.  That is, they generate similar revenues year over year, and are expected to do the same over the term of the Plan.  Anticipated revenue figures are based on traditional annual averages, and, more specifically, the average of the Debtor's post-petition revenue as stated in its monthly operating reports.  Given the reduction in vehicle loan payments and overall streamlined operating expenses, in combination with reasonably anticipated revenue figures as shown at Exhibit "D", Debtor will be able to support and complete its Plan as proposed.  Additionally, the Debtor will have enough cash on hand on the Confirmation Date to pay all the Claims and expenses that are entitled to be paid on that date, and/or Debtor has negotiated with holders of such Claims per consensual agreement.  From and after the Confirmation Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

2.    *Debtor's Assets*

Unless otherwise stated, on and after the Confirmation Date, all assets of the Debtor's estate shall vest in the Reorganized Debtor free and clear of any and all liens, mortgages, pledges, security interests, restrictions, prior assignments, liabilities, obligations, encumbrances, charges and claims of every kind whatsoever, subject only to the liens specifically preserved by the Plan.

E.    **Risk Factors**

The proposed Plan has the ordinary risks associated with income sources rooted in small business revenues.  Debtor hopes to offset these risks by bringing in new lines of business by contracting directly with physician offices in order to provide patients transportation to/from office visits as well as other third party vendors such as LogistiCare.  Additional risk lies in the Debtor's aging fleet of vehicles.  Per the Debtor's projections, an additional amount is budgeted for vehicle maintenance to allow its current fleet to be utilized until the end of its Plan term.

F.    **Executory Contracts and Unexpired Leases**

The Plan, attached as Exhibit "A", lists all executory contracts and unexpired leases that the Debtor will assume under the Plan.  Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.  The Debtor has several leases with various entities as described below:

1.    Reliant Transportation Inc. (Claim #26) – The Debtor sub-leases property at 4011-4055 Richmond Street, Phila., PA which is used to park/house its vehicles.  The Debtor rejects this lease.

2.    American Honda Finance Corporation (Claims #25 & 28) – To the extent applicable, the Debtor rejects these motor vehicle leases as they are between the Debtor's principal,

Mariya Broytman and American Honda Finance Corporation.  These lease agreements do not involve the Debtor as a party or a guarantor.

3.  <u>One EZ Life, Inc., Advanced Life Support Ambulance, Inc., Mariya Broytman</u> – To the extent lease agreements exist between the Debtor and these entities, they are rejected.

**Debtor is not aware of any other leases or executory contracts.**

Any claim for damages arising by reason of the rejection of any executory contract or unexpired lease will constitute a Class 8 Claim.  If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.  Consult your adviser or attorney for more specific information about particular contracts or leases.  If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

G.    **Tax Consequences of Plan**

***THE DEBTOR DOES NOT OFFER TAX ADVICE TO HOLDERS OF CLAIMS OR INTERESTS.  EACH HOLDER OF A CLAIM OR INTEREST SHOULD CONSULT WITH A TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE CONFIRMATION OF THE PLAN AS THIS DISCLOSURE STATEMENT IS NOT INTENDED AND SHOULD NOT BE CONSTRUED AS LEGAL OR TAX ADVICE TO ANY CREDITOR.***

IV.    **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code.  These include the requirements that:  the Plan must be proposed in good faith; at least one impaired class of claims must accept the Plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A.    **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes, and (2) impaired.

In this case, the Plan Proponent believes that classes 2 through 10 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

1.      *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a Proof of Claim in this case was <u>November 15, 2019.</u>**

2.      *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.      *Who is **Not** Entitled to Vote*

The holders of the following types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and

- administrative expenses.

**Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.**

4.    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim/class.

B.    **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed below in Section B.2.

1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.    *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cramdown" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C.    **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in Chapter 7 liquidation. Debtor's assets consist of used vehicles subject to purchase money security interests which exceed their value.[2] Regarding its vehicle loan creditors, the Debtor proposes to pay them the petition date value of the vehicles over the term of the Plan, with interest. As such, they will receive more than liquidation value from the Debtor's Plan than they would

---

[2] To clarify, at line 11 of the Debtor's schedule A/B, the Debtor lists accounts receivable in the amount of $53,421.12. This amount represented the amount due from LogistiCare as of the Petition Date which was being held as a result of the U.S. Dept. of Labor's levy. The funds were subsequently released post-petition. The Debtor does not typically carry significant accounts receivable as its two vendors generally pay in the normal course.

otherwise receive from a Chapter 7 Trustee or auction following repossession. Further, all priority and general unsecured creditors would receive little to nothing upon liquidation. Instead, the Debtor is proposing to pay its priority claims in full while providing a significant distribution to general unsecured creditors. The Debtor employs over 40 people in its operation and will continue to do so. Thus, the best interests of the Debtor, its employees and its creditors would be served by acceptance of the Plan.

### D.    **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

#### 1.    *Ability to Initially Fund Plan*

Debtor shall maintain payments to secured lenders as proposed herein and satisfy amounts due to priority creditors within the required time periods. In order to do so, the Debtor proposes a reduced payment to all vehicle lenders based on the value of the collateral supporting their loans. Initial funding required as of the Confirmation Date consists of the first monthly installment of the Debtor's proposed Plan payment. The Debtor will be able to make its monthly Plan payments from its income going forward. See, Plan projections attached hereto as Exhibit "D".

#### 2.    *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments. Based on the Debtor's projections, and historical income and expenses, the Debtor anticipates being able to maintain payments pursuant to its proposed Plan. See, Plan projections attached hereto as Exhibit "D".

***The above determinations by the Court will occur at the hearing on confirmation after a Plan has been voted upon and accepted. The Court's judgment on these matters does not constitute an expression of the Court's opinion as to whether the Plan is a good one or an opinion by the Court regarding any other factors discussed in the Plan.***

## V.    **EFFECT OF CONFIRMATION OF PLAN/MISCELLANEOUS PROVISIONS**

### A.    **Discharge of Debtor**

Pursuant to 11 U.S.C. Section 1141(d)(1), the Debtor shall be discharged and released of all Claims arising prior to the Confirmation Date, other than those Claims arising pursuant to and in accordance with the terms of the Plan.

### B.    **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan.

**AMENDMENTS TO THE PLAN'S CLASSIFICATION AND TREATMENT OF ONE OR MORE CLASSES THAT DO NOT MATERIALLY AND ADVERSELY CHANGE THE TREATMENT OF ANY CLASS MAY BE MADE TO THE PLAN.  SUCH AMENDMENTS MAY BE APPROVED BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING WITHOUT ENTITLING THE MEMBERS OF ANY CLASSES WHOSE TREATMENT IS NOT ADVERSELY CHANGED TO WITHDRAW ANY VOTES CAST FOR OR AGAINST THE PLAN.**

Upon request of the Debtor, the United States Trustee, or the holder of an allowed claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

C.    **Final Decree**

Debtor will seek a Final Decree after substantial consummation of the Plan, and will pay all outstanding Quarterly Fees due to the Office of the United States Trustee.

D.    **Section 1146 Exemption.**

To the fullest extent permitted under Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any property under the Plan or the execution, delivery or recording of an instrument of transfer under the Plan, or the revesting, transfer or sale of any real or other property of or to the Debtor shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.   Any recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded is ordered and directed to accept such instrument without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

E.    **Valuations under Section 506 of the Bankruptcy Code**

The vehicle lenders listed in Classes 2-6 of the Debtor's Plan are undersecured because their liens exceed the value of the vehicles acting as collateral for the loans.  Pursuant to 11 U.S.C. Section 506(a)(1), the Plan proposes to split each of those claims into two claims: (1) a secured claim equal to the value of the collateral, and (2) a general unsecured claim equal to the remaining amount due[3]. Therefore, under the terms of the proposed Plan, the secured portion of each vehicle lender's claim shall be satisfied upon receipt of all payments contemplated by the terms of the proposed Plan, and titles to the vehicles shall be released to the Debtor at that time.  The balance shall be a Class 8 general unsecured claim and be paid as such.

---

[3] Subject to the Debtor's 11 U.S.C. Section 506 valuation motion, if necessary.

F.      **Bankruptcy Court Jurisdiction/Objections to Claims**

The Bankruptcy Court shall retain jurisdiction after the Plan has been confirmed.  The Plan provides that within sixty (60) days after the Confirmation Date, objections to Claims may be filed with the Court by the Debtor.  Any such objection shall be served upon the United States Trustee and the Claimant holding the Claim to which objection is made.

## VI.      <u>CONCLUSION</u>

The materials provided in this Disclosure Statement are intended to assist you in voting on the Plan of Reorganization in an informed fashion.  If the Plan is confirmed, you will be bound by its terms.  You are urged to review this material and make such further inquiries as you deem appropriate, and then cast an informed vote on the Plan.

Respectfully submitted,

By:   <u>s/Nikanor Broytman</u>
Nikanor Broytman
Vice President,
Regional Medical Transportation, Inc.

Date: <u>March 4, 2020</u>